UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE                               )
                                    )
NEIL SNOWDEN                        )    No. 05 B 57906
                Debtor.             )

MEMORANDUM OPINION ON DEBTOR'S
MOTION TO VACATE ANNULMENT OF THE AUTOMATIC STAY

On October 15, 2005, Neil Snowden ("Snowden" or "Debtor") filed this bankruptcy case under Chapter 13 of the Bankruptcy Code ("Code"), Title 11. An Order was entered on November 28, 2005 granting Litton Loan Servicing, Inc.'s ("Litton Loan") Motion to Annul the Automatic Stay with respect to Snowden's foreclosed residential real estate that had been sold at a pre-petition judicial sale. On March 9, 2006, Snowden filed a Motion to Vacate Annulment of the Automatic Stay based on Rule 60(b) of the Federal Rules of Civil Procedure.

A hearing was held on March 15, 2006 and the parties were directed to submit legal authority supporting their arguments. Oral argument was held on March 29, 2006 and neither party requested an opportunity to offer evidence. Finding no factual dispute relevant to the matter, it was announced from the bench that an order denying Snowden's motion would be entered for reasons to be expanded upon in a written opinion. This ruling rests on the following Undisputed Facts and Conclusions of Law.[1]

---

[1] Analysis and conclusions of law issued in this matter are based on Title 11 of the United States Code in effect prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

## UNDISPUTED FACTS

1. Prior to filing the instant bankruptcy case, Snowden was a defendant in a mortgage foreclosure proceeding brought by Litton Loan in Cook County, Illinois. Litton Loan obtained a foreclosure judgment on September 9, 2005.

2. Litton Loan purchased the foreclosed property at a judicial sale for an amount less than the balance on the mortgage note.

3. As required under the Illinois Mortgage Foreclosure Law ("IMFL"), the sale was confirmed by a state court. An order indicating such was entered on October 5, 2005.

4. Snowden filed a voluntary Chapter 13 petition, along with a plan, on October 15, 2005. In his plan, Snowden sought to cure the default on the mortgage note to Litton Loan.

5. On November 8, 2005, Litton Loan filed its Motion to Annul the Automatic Stay. In its motion, Litton Loan incorrectly alleged that a third party had purchased Snowden's property. Relying on the Seventh Circuit Court of Appeals' decision in Colon v. Option One, 319 F.3d 912 (7th Cir. 2003), it argued that the automatic stay should be annulled because the property was not a part of Snowden's bankruptcy estate. Snowden did not file a response to the motion or dispute the allegations stated therein by any means.

6. A hearing on Litton Loan's motion was held on November 23, 2005. The Order granting the motion was entered on November 28, 2005.

7. On March 9, 2006, Snowden filed a Motion to Vacate Annulment of the Automatic Stay based on Rule 60(b) of the Federal Rules of Civil Procedure. Relying on information obtained from a Litton Loan representative after the Order was entered, Snowden's motion is based on the discovery that Litton Loan had purchased the foreclosed property at the

2

judicial sale. As the such, he argues that he therefore held an unexpired statutory special right to redeem the property when his case was filed that allows him to cure the default on the mortgage note in a Chapter 13 plan.

8. A hearing was held on March 15, 2006. The parties were ordered to submit legal authorities in support of their respective positions.

9. Oral argument on the issues involved in this matter was held on March 29, 2006. An oral ruling was issued from the bench that Snowden's motion would be denied after preparation of an opinion.

10. Any further facts set forth in the Conclusions of Law below are additional undisputed facts.

## CONCLUSIONS OF LAW

### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is before the bench pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G) and District Court Internal Operating Procedure 15(a). Venue is proper under 28 U.S.C. § 1409(a).

### Discussion

Snowden argues that the annulment Order was entered based on the false assertion that the foreclosed property was purchased by a third party and not the mortgagee, Litton Loan. Without further elaboration, Snowden alleges that his counsel discovered this information from a Litton Loan representative after the Order was entered. Under the Illinois foreclosure statute (discussed more fully below), Litton Loan's purchase at the foreclosure sale afforded Snowden a

special right to redeem the foreclosed property. This right, according to Snowden, allows him to cure the default on the mortgage note in his Chapter 13 plan.

While Litton Loan agrees that it purchased the foreclosed property at the judicial sale, it takes the position that Snowden's special right to redeem cannot be extended for the life of his Chapter 13 plan. Illinois law specifically defines the contours of a mortgagor's right to redeem and the Code does not allow for the type of expansion of property rights advocated by Snowden. Litton Loan additionally argues that even if the Order had been entered prematurely, it inevitably would have been entered because Snowden's special right to redeem has since expired without being exercised.

### The Bankruptcy Code & the Illinois Mortgage Foreclosure Law

The first issue presented is whether Snowden can use a Chapter 13 case to cure a default on a mortgage attached to his principle residence when the bankruptcy case is filed after the property has been sold at a foreclosure sale but before expiration of his right afforded under state foreclosure law to redeem the property.

Under section 1322(b)(5) of the Bankruptcy Code, a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." See also 11 U.S.C. § 1322(b)(3) ("provide for the curing or waiving of any default."). Notwithstanding this allowance and applicable nonbankruptcy law, "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under [section 1322(b)(5)] *until such residence is sold at a foreclosure*

4

*sale that is conducted in accordance with applicable nonbankruptcy law.*" 11 U.S.C. § 1322(c)(1) (emphasis added).

Under the Illinois foreclosure law, a successful bidder on foreclosed property at a judicial sale is awarded a receipt or certificate of sale. 735 ILCS 5/15-1507. Until the sale has been confirmed by a court, "[t]he highest bid received by a sheriff at a judicial sale is merely an irrevocable offer to purchase the property an[d] acceptance of the offer takes place when the court confirms the sale." Citicorp Sav. v. First Chicago Trust Co., 645 N.E.2d 1038, 1045 (Ill. App. Ct. 1995); see also 735 ILCS 5/15-1508. The judicial sale is usually consummated once it is confirmed by a court, where there is no right to redeem after that date. World Sav. & Loan Ass'n v. Amerus Bank, 740 N.E.2d 466, 474 (Ill. App. Ct. 2000); BCGS, L.L.C. v. Jaster, 700 N.E.2d 1075, 1079 (Ill. App. Ct. 1998).

However, despite entry of a confirmation order, a mortgagor is granted a special right to redeem the property if it was purchased at the foreclosure sale by the mortgagee. This period ends 30 days after the date the sale is confirmed. 735 ILCS 5/15-1604(a). If a Chapter 13 case is filed prior to the expiration of a redemption right, section 108(b) of the Bankruptcy Code extends the redemption period to 60 days from the date that the bankruptcy case was commenced.[2]

---

[2] Section 108(b) provides:

Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

5

Since the foreclosure sale of Snowden's property was confirmed by a state court judge on October 5, 2005 and the bankruptcy case was filed on October 15, 2006, Snowden argues that his special right to redeem existed on the date of his bankruptcy filing and even on the date that the stay was annulled on November 28, 2005. He further contends that for the purposes of curing his default under section 1322(c)(1) of the Bankruptcy Code, the foreclosure sale cannot be considered complete because his redemption right had not expired when his case was filed. Snowden relies primarily on the Seventh Circuit Court of Appeals' decision in Colon v. Option One, 319 F.3d 912 (7th Cir. 2003) for support.

In Colon, the debtor filed a voluntary Chapter 13 petition after the foreclosure sale of her residential real estate but prior to the state court's confirmation of the sale. 319 F.3d at 915. The debtor's plan proposed to cure the default on the mortgage note. Id. Asked to determine "whether, under § 1322(c)(1) of the United States Bankruptcy Code, a Chapter 13 plan may provide for the curing of a default on a debtor's principal residence when the petition and plan were filed after the residence was sold at a foreclosure sale, but prior to the confirmation of the sale in accordance with the IMFL", the Court concluded the following:

> Section 1322(c)(1) of the Bankruptcy Code states that a default on a mortgage lien "may be cured ... until such residence is *sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.*" 11 U.S.C. § 1322(c)(1) (emphasis supplied). The statute's wording and its legislative history both indicate an intent to set the limit on the right to cure no earlier than the date of the judicial sale. This was Congress' response to *In re Roach*. However, the provision's reference to "applicable nonbankruptcy law" requires deference to state mortgage law on the scope of any right to cure after the sale. After our study of Illinois foreclosure law, we cannot conclude that the convergence of § 1322(c) and Illinois foreclosure law provides anything like an absolute right to cure a default up until the time of the confirmation hearing. In this context, neither the

---

(2) 60 days after the order for relief.

6

>wording nor the legislative history provides support for reading § 1322(c) as creating a more expansive right to cure than that which the Illinois Code provides. Indeed, it is clear that any right to cure after the time of the sale would have to be found in the state foreclosure law. The Bankruptcy Code is most logically read in this context to permit cure to the extent that Illinois law does.

Colon, 319 F.3d at 916, 920-21.

Unlike the debtor in Colon, Snowden notes that he still held a statutory right to redeem at the time that his bankruptcy case was filed. He argues that this forecloses any presumption under Colon that Litton Loan is entitled to the property because the property could be redeemed by him at any time prior to expiration of the redemption period.

Although Snowden's argument may be followed in certain jurisdictions, see e.g., In re Pellegrino, 284 B.R. 326 (Bankr. D. Conn. 2002)(Bankruptcy judge held that section 1322(c)(1), not section 108(b), governs the tolling of a right to redeem a foreclosed property), it holds no weight.

Upon the filing of a bankruptcy, an estate comprised of all legal and equitable interests of a debtor is created. 11 U.S.C. § 541(a). Illinois law determines whether, and to what extent, a debtor has a legal or equitable interest in property at the commencement of a bankruptcy case. Matter of Yonikus, 996 F.2d 866, 869 (7th Cir.1993) (citing Butner v. United States, 440 U.S. 48, 55(1979)). Under the Illinois Mortgage Foreclosure Law ("IMFL"), the "Owner of Redemption", or mortgagor, holds a fee title. Van Fleet v. Van Fleet, 467 N.E.2d 592, 595 (Ill. App. Ct. 1984); 735 ILCS 5/15-1212. Compare Goldberg v. Tynan, 773 F.2d 177, 179 (7th Cir. 1985). The mortgagor also holds legal title to the foreclosed property until a deed is issued to the holder of a certificate of sale. See Newport Condo. Ass'n v. Talman Home Fed. Sav. & Loan Ass'n, 545 N.E.2d 136, 139 (Ill. App. Ct. 1989); Van Fleet, 467 N.E.2d at 595. In Illinois,

7

> [a]fter the expiration of the period of redemption[,] the title of the mortgagor would be absolutely gone, in the sense that the purchaser had become absolutely entitled to a conveyance of it; and in this sense it has often been said that his title is gone, but it is never actually out of him until a conveyance is made. . . . The mortgagor's right is gone if the purchaser complies with the statute, and avails himself of the right to a conveyance of the title. By the decree and by the statute the title of the mortgagor and those claiming under him would only be divested, and the legal title vested in defendant, upon the execution of a deed.

Van Fleet, 467 N.E.2d at 595 (citing Lightcap v. Bradley, 58 N.E. 222, 227-28 (Ill. 1900)). See also 735 ILCS 5/15-1508, 1509. See e.g., Federal Nat'l Mortg. Ass'n v. Joseph (In re Joseph), 93 B.R. 151, 155 (N.D. Ill. 1988); In re Cadwell's Corners Partnership, 174 B.R. 744, 751-52 (Bankr. N.D. Ill. 1994); Agribank, FCB v. Rodel Farms, Inc., 623 N.E.2d 1016, 1020 (Ill. App. Ct. 1993). "If a deed is never issued to the holder of the certificate of sale, the title remains in the holder of the right to redeem and does not revest in him." Van Fleet, 467 N.E.2d at 595.

A Seventh Circuit panel noted in Goldberg v. Tynan that under Illinois law, the only asset that passes into a bankruptcy estate when a mortgagor files a Chapter 13 petition prior to the expiration of a redemption right is the statutory right of redemption. 773 F.2d 177, 179 (7th Cir. 1985); In re Carter, 312 B.R. 356, 359 (Bankr. N.D. Ill. 2004). Compare 11 U.S.C. § 541(d). Unless this right is exercised within the statutory time limits imposed by Bankruptcy Code section 108(b), the debtor loses whatever right he may have to redeem the property; this re-enforces the right of a holder of a certificate of sale to obtain legal title and possession of the property as a matter of law. See, e.g., Tynan, 773 F.2d at 179 (Court held that the debtor's failure to redeem the foreclosed property resulted in ownership vesting "totally and completely in the foreclosure purchaser.").

8

Despite Snowden's contention, section 1322(c)(1) of the Bankruptcy Code does not permit a debtor to toll the redemption period for the life of a Chapter 13 plan. Accord Canney v Merchants Bank (In re Frazer), 284 F.3d 362, 372 (2d Cir. 2002) (section 108(b), not section 362(a), governs the tolling of a period to redeem); Tynan, 773 F.2d at 179 (holding that redemption period cannot be tolled over the life of a Chapter 13 case); Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir. 1983) (section 362(a) cannot be used to toll the period to redeem foreclosed property). Section 108 (see fn. 2) explicitly defines the minimum and maximum time periods in which a debtor or trustee must act on a right to redeem foreclosed property. Although section 1322(c) was enacted after section 108(b) was introduced into the Code, section 1322(c) cannot be read to override the time provisions outlined in section 108(b). "Absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with exiting law and its judicial construction." In re Witt, 113 F.3d 508, 513 (4th Cir. 1997) (quoting Estate of Wood v. C.I.R., 909 F.2d 1155, 1160 (8th Cir. 1990) and Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 277 (8th Cir. 1983)).

Furthermore, any right Snowden has to cure the default on the mortgage note under section 1322(c) is only permitted to the extent that it is allowed for in Illinois law. See Colon, 319 F.3d at 921. By operation of section 108(b), Snowden had until December 14, 2005 to exercise his redemption right. Under the IMFL, this would have required him to pay the sale price plus all additional costs, expenses incurred by the mortgagee and interest at the statutory rate prior to the expiration of that redemption period. See 735 ILCS 5/15-1604. This right cannot be stretched to extend throughout the life of a Chapter 13 plan . Allowing a mortgagor to tender payments over an extended period of time would defeat the purpose of a foreclosure

9

action. Because Snowden could not or decided not to exercise this right, it expired by operation of law on December 14, 2005. Reading most broadly the reasoning in the Seventh Circuit <u>Colon</u> opinion, since Snowden's rights to redeem extended after the sale confirmation order, had the point been raised the motion to annul might have been continued beyond that date until December 14, 2005 when the special right of redemption terminated. But after that date, under <u>Colon</u>, the Debtor's rights in the property entirely ended when his redemption right ended.

### "Newly Discovered Evidence" Under Rule 60(b) Fed.R.Civ.P.

The foregoing discussion assumes <u>arguendo</u> that Snowden can raise this issue by motion filed on March 9, 2006, to vacate the order of annulment entered November 28, 2005, over three months earlier. But he cannot do so.

Under Rule 60(b) Fed.R.Civ.P. (as adopted by Rule 9024 Fed.R.Bankr.P.), a party can seek relief from a final judgment, order or proceeding based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . . ." Fed. R. Civ. Pro. 60(b)(2). Such relief is extraordinary in nature and will only be granted in exceptional circumstances. <u>Providant Sav. Bank v. Popovich</u>, 71 F.3d 696, 698 (7th Cir. 1995). In this circuit, a movant must prove that:

> (1) the evidence was discovered following trial;
> (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;
> (3) the evidence is not merely cumulative or impeaching;
> (4) the evidence is material; and
> (5) the evidence is such that a new trial would probably produce a new result.

See Jones v. Lincoln Elec. Co., 188 F.3d 709, 732 (7th Cir. 1999). A motion premised on Rule 60(b)(2) must fail if any one of these prerequisites is not satisfied. Matter of Wildman, 859 F.2d 553, 558 (7th Cir. 1988).

Snowden relies on the "newly discovered evidence" clause of Rule 60(b) as the basis for his motion. Rule 60(b)(2) is designed to allow modification of a prior ruling when evidence comes to light after a ruling that could not have been learned earlier. See Bell v. Eastman Kodak Co., 214 F.3d 798, 801 (7th Cir. 2000). Obtaining relief under Rule 60(b)(2) is extraordinary and as the Seventh Circuit Court stated in Publicis Communication v. True North Communications, Inc., "[a] party needs awfully good stuff to win a Rule 60(b)(2) motion." 206 F.3d 725, 730 (7th Cir. 2000). Snowden, however, has not presented such "awfully good stuff" that vacation of the order is warranted.

Snowden's "newly discovered evidence" consists of his counsel's discovery after the Order was entered that the creditor Litton Loan was the purchaser at the foreclosure sale. However this evidence obviously could have been discovered either at the foreclosure sale or, at a minimum, prior to filing the bankruptcy case. It certainly could have been learned before the annulment order was entered. Snowden provides no excuse for his failure to exercise due diligence in discovering this information. See Rutledge v. United States, 230 F.3d 1041, 1052 (7th Cir. 2000). For undisclosed reasons, he waited until March 9, 2006 before seeking redress in this forum.

Moreover, for reasons discussed earlier, the information would not have produced a different result if presented at the hearing on Litton Loan's annulment motion. At best, it could arguably have delayed issuance of the annulment Order until Snowden's right to redeem had expired on December 14, 2005. Snowden has not demonstrated or even argued that the

11

annulment Order did or could have prevented him from exercising his redemption right. That right lapsed because he was not able to exercise it.

## CONCLUSION

In light of the foregoing, Snowden's Motion to Vacate Annulment of the Automatic Stay is denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 14th day of April 2006.

## CERTIFICATE OF SERVICE

I, Dorothy Clay certify that on April 14, 2006, I caused to be mailed by United States first class mail copies of the foregoing MEMORANDUM OPINION to the following:

Patrick J. Semrad, Esq.
Patrick J. Semrad & Associates
407 South Dearborn Street
Suite 400
Chicago, IL 60604
Counsel for Debtor

Mike Halpin, Esq.
Pierce & Associates
One North LaSalle Street
Suite 1300
Chicago, IL 60602
Counsel for Litton Loan Servicing

Tom Vaughn
200 South Michigan Avenue
Suite 1300
Chicago, IL 60604
Chapter 13 Trustee

_Dorothy Clay_
Secretary/Deputy Clerk